Good morning, Your Honor. I'm Carol Strickman representing Petitioner Mr. Blakeley. My client, George Blakeley, was wrongly convicted of voluntary manslaughter. He had no intent to kill Lionel Vallow. His attorney asked for jury instructions on the absolute defense of self-defense and on the backup defense of involuntary manslaughter based on imperfect self-defense with no intent to kill. The judge refused to give that, lesser included, that the defense counsel was relying on as a backup defense. Instead, the court gave three different and unrequested manslaughter instructions, one voluntary, two involuntary. The two involuntary ones did not apply to this case. Any reasonable jury, if properly instructed, would have had a reasonable doubt whether my client formed the intent to kill and would have convicted him on the theory requested by defense counsel had it been given. Tell us why you think the two involuntary instructions don't apply. Well, the voluntary instruction based on negligence specifically says that it doesn't apply if the crime was committed based on inattention or mistake or something like that. And that's sort of the hallmark of the unreasonable self-defense. It's an unreasonable assessment of the situation. And that seems to be ruled out by that particular instruction. The other instruction, the misdemeanor manslaughter instruction based on brandishing, begins by saying if the act is not done in self-defense. And, of course, that was the defense, that it was done in self-defense. It doesn't say reasonable or unreasonable self-defense. And so it seemed to basically be excluded off the get-go if you read those instructions. Also, the California Supreme Court, in its opinion, has stated that those instructions don't really apply to the factual context that was arisen here. Now, was there an instruction that there had to be intent for nonvoluntary for voluntary manslaughter? Yes. The definition of the voluntary manslaughter instruction stated that you had to show intent to kill. That's true. And the reason that we've – that the jury, I believe, didn't truly focus on that element is because when you take a step back and look at the big picture, what was going on in this case, the prosecutor was seeking a murder conviction, a second degree murder conviction, where he didn't have to prove intent to kill. He could prove simply implied malice based on – implied malice, which didn't require the intent to kill. Secondly, the defense attorney was seeking an acquittal based on self-defense. The jury could have acquitted even if they found intent to kill. So intent to kill wasn't a factor at all, or hardly at all. Wasn't it argued to the jury, though? And so, therefore, it wasn't argued to the jury. No. I think it was argued to the jury, wasn't it? Didn't both sides argue intent? Only in a very passing way. And the prosecutor mainly didn't argue intent to kill. He argued implied malice. And he based that on primarily flight. And that doesn't really get to this issue of intent to kill or not intent to kill. Similarly, defense counsel didn't need to negate intent to kill because you can have intent to kill in a self-defense context. So the primary arguments on both sides, which is the vast majority of the argument, which I included in the excerpts of record there, sidestepped the precise issue we're looking at here, which is, did he or did he not have the intent to kill? Well, we have a jury instruction. The jury was instructed on that. And the jury found voluntary manslaughter under that standard. So how do we get to prejudice in this case? Well, we are – I don't know that we can assume that the jury got to intent to kill. Well, we take the presumption that they followed the instructions and voluntary manslaughter included the intent to kill. So. Yes. But as I said, first of all, the jury was never really asked to – it was never argued to the jury, George Blakin has the intent to kill because of this, this and this. He doesn't have the intent to kill because of this, this and this in any significant way. What was being argued was second-degree murder versus acquittal. Now, the prosecutor suggested a compromise verdict. That's another reason. So it's not – it was not the primary issue. This issue of intent to kill was not the primary issue. It was not addressed in the arguments of counsel. And finally, I think there's a strong likelihood that this was a compromise verdict. The evidence was very murky. The prosecutor conceded his witness credibility problems. He suggested unreasonable self-defense as a middle ground. He articulated the wrong – a wrong burden of proof. He said in the abstract it may be difficult to find – to figure out whether on the – you know, whether on the one hand it's that side is right or the other hand this side is right. It may be difficult for either side to prove beyond reasonable doubt, essentially. And also suggested unreasonable self-defense is a middle ground. And this was three days of deliberations. This was a Friday afternoon verdict. It was very difficult to figure out what really happened here. My client said he didn't have the intent to kill. The other witness had tremendous credibility problems. And unreasonable self-defense basically fit the case much better than the involuntary manslaughter instructions that were given. So I think it's very likely that the jury just figured that, okay, we can't agree. It doesn't seem like it's this. It doesn't seem like it's – we're going to settle on the middle ground, which in the self-defense case is unreasonable self-defense. And the only instruction that really clearly talked about that was the voluntary manslaughter instruction. And I think that's what happened. I don't think we can find that it didn't. The defense counsel was – had a way to approach this trial, wanted acquittal, backup, wanted involuntary manslaughter, and could have made that argument if she was given a simple instruction, the instruction that she asked for. Instead, she was given two other instructions which didn't apply. And when you're arguing a case, you can only deal with so much. And so I think they both kind of – both attorneys just sort of threw in this other notion. But in reality, defense counsel was hamstrung and couldn't make a good strong argument for involuntary manslaughter based on imperfect self-defense because the court didn't give her that vehicle, that instructional vehicle. So assuming that there's State instructional error, why does that rise to the level of a due process violation? Well, for this very reason, that this was defense strategy. You know, the defendant has a right to present a defense. And in order to not just put on the evidence but have the theory, requested theory, be given to the jury so that the jury can apply the evidence to the law and come back with that verdict if it finds it appropriate. And in this case, the court refused to give the one lesser instruction that defense counsel wanted and gave three that she didn't want. The two involuntaries didn't apply and were just unhelpful and just confused things more, if anything. So for this reason, I think based on clearly established law, the deprivation of an instruction on a requested defense is, you know, is due process error. There was evidence from which the jury could either have found voluntary or involuntary. Is that accurate? Yes, I think so. There was also evidence where they could have found acquittal and could have found a second degree. I mean, all four of those verdicts were in play. However, unlike other cases, what we see in this case, it was very hard to figure out what the facts were, and I think that's why we can't really be confident that there was clear thinking, unanimity on intent to kill by this particular jury, given the murkiness of the facts. And that's what's, I think, very unusual about this case compared to many that I see, that oftentimes you can see that a jury would have found intent to kill because the evidence was reasonably strong, and here it was not. No, none of the briefs of opposing counsel and none of the court opinions that have looked at this case have spent one sentence on trying to say that this case shows intent to kill. It's not there. The prosecutor didn't even argue that it was there. Best he came up with is there was flight. Flight just means a person maybe feels they're guilty of something, but it doesn't mean, you know, a consciousness of guilt in general, but it doesn't mean, therefore, the fleeing defendant had a particular specified intent. It doesn't ñ it can't be for that. So the evidence, as I said, is very weak on intent to kill. There was one statement by the defendant to the effect that he said, oh, I'm sorry. I had to stab him, or something like that. He felt he had to. He said he felt he had to. He didn't say he felt he had to kill him. I think he's ñ I think he might have said he felt he had the right to kill him. I'm not completely sure of that. But he said he didn't intend to kill him. And it wasn't even ñ he didn't admit that he did, in fact, stab him. He said he pulled out his knife, the man charged into him, they grappled, he fell on the floor, and it wasn't until that point that he realized he'd been stabbed by the knife. That was the defense testimony of how this happened. And the evidence was, by the other witness, the other prosecution witness, was indeed this man was running towards him. And of course, this was somebody who's much bigger, much taller, has already swung a beer bottle at my client, and my client pulled out his knife in self-defense. And in seconds, this man was stabbed a single time. Now, that's a very murky fax to determine whether he had an intent to kill or not. Both of them were ñ had been drinking. There was no pre-event, preexisting conflict between these two fellows. It's just a situation that rapidly escalated. And it's not clear at all that he formed an intent to kill, you know, intent to protect himself is what was argued. Do you want to take some time for rebuttal? Yes, please. Okay. Thank you. We're from the State. Good morning, Your Honors. Juliet Haley, appearing for Respondent and Appellee Carl Talhoun. I would just begin by responding on the ñ on this prejudice analysis and counsel's argument that it is likely that the jury, because of the instructions given, were impacted by the failure to receive a specific pinpoint instruction on involuntary manslaughter. And I think that if you begin by going through the instructions, first of all, we have ñ you know, this is a case where the jury's given the murder instruction, given involuntary manslaughter, given imperfect self-defense, the flannel instruction, given self-defense, and given involuntary manslaughter. So they're given the range. And I think that the strongest argument for why the Supreme Court concluded that this was not prejudicial is because if you start by looking at, first of all, the voluntary manslaughter instruction which the jury was given says as one of its elements, intent to kill. And they're also given 17.10, which says you have to find any ñ if you find that he did not commit the charged offense, you have to find any lesser-included offense beyond a reasonable doubt, every element. And they're given the voluntary manslaughter which says intent to kill. So counsel's asking this Court and the Supreme Court said it was just too crazy to assume that the jury disregarded those instructions and found voluntary notwithstanding its conclusion there was no intent to kill, where it says a requirement is intent to kill. The Supreme Court did say that there was error. Yes. There was state law error. Absolutely. Because under state law, much like under the federal system, the defendant is entitled to any instruction, lesser-included offense instruction, that there's substantial evidence to support. So under state law, it was error. What was the error? What the error was is that there had been some confusion or sort of a silence about whether under California law, if you had ñ we all ñ under California laws, you have an actual but unreasonable belief in the need to defend yourself. Imperfect self-defense. Imperfect self-defense. That gets you voluntary manslaughter because it negates the element of malice. And an instruction was given on that. And that instruction was given. So his defense of unreasonable sense was given to the jury. Where the error was found is that there had been confusion. What if you argue that I had no intent to kill in addition to unreasonably believing in the need to defend myself? And up until that point, what the Supreme Court said was that up to that point, if you had no intent to kill, it would be involuntary manslaughter. And what they said in Blakely, they said, from now on, going forward, even if you have no intent to kill, like the Federal system, it's still voluntary manslaughter. But that's a judicial enlargement. We can't apply it to this defendant. So it is state law error, and we have to assess the prejudice of that error. And why ñ how did they reason that it was not prejudicial? They reasoned that it was not prejudicial because they went through and said, the jury was instructed on voluntary manslaughter. They were told that they have to find an intent to kill. The involuntary manslaughter instruction was also given. And in that instruction, it said ñ it differed from the defendant's requested instruction in the following way. Both start off ñ I have them here ñ by saying, every person who unlawfully kills a human being without malice of forethought and without intent to kill is guilty of the crime of involuntary manslaughter. So they got that instruction. And what they found was, since they got that instruction, here's involóno intent to kill. Here's volórequires an intent to kill, an affirmative finding of intent to kill. It's not likely that the jury disregarded that voluntary manslaughter instruction and went ahead and found him guilty of it, even if they believed he had no intent to kill. And they also looked at the arguments of counsel. And contrary to ñ to counsel's characterization of those arguments, there were not two sentences devoted to this. Kennedy. May I ask you this? Yes. Is imperfect self-defense a defense to voluntary manslaughter, reducing it to involuntary manslaughter? It is a ñ well, under the ñ under the prior ñ under California law up to that point, it is ñ I mean, it's ñ I guess I'm having difficulty with your question because it's a matter of sort of analytic. I mean, I think in ñ in theory, you ñ it's ñ once you negate malice because of unreasonable self-defense, you have these sort of two parallel lessers. And they are not ñ like, one is not lesser of the other. But I think elementally, they are, because you're finding an absence of intent to kill. Whereas voluntary manslaughter assumes an intent to kill, but an unreasonable self-defense belief or a heat of passion is the other ñ Let me repeat my question. Yeah. In a voluntary manslaughter instruction, should you give an imperfect self-defense so that it may be reduced, if found as a defense, to involuntary manslaughter? If there's substantial evidence ñ Right. That's the point. Right. If there's substantial evidence ñ yeah, I ñ if the question ñ the court's question is, was he entitled to an involuntary manslaughter instruction in this case under California law? The answer is yes. And he got it. And he got it. Right. What he didn't get was a pinpoint. Right. Reducing voluntary to involuntary through imperfect self-defense. Absolutely. My issue ñ my question to you, again, is ñ please analyze that for us. Is imperfect self-defense a way to reduce involuntary ñ I mean, voluntary manslaughter to involuntary manslaughter? Yes. Under California law, it is. I mean, I ñ How do you analyze the ñ I don't know if it reduces ñ Go ahead. It gets ñ it ñ you're not going to find voluntary manslaughter unless you've found imperfect self-defense. So you've already found imperfect self-defense when you arrive at voluntary manslaughter. Well, you can have imperfect self-defense and the intent to kill, can't you not? Absolutely. So, therefore, it doesn't reduce voluntary to involuntary. Right. That's what I ñ because you've already found it. Your prior answer ñ No. Would you like to make a motion to strike, granted? I would make a motion to strike and have Your Honor please ñ so ñ How do you respond to counsel's argument that implied malice ñ the implied malice instruction distorted the intent to kill required for voluntary manslaughter in this case? I think that it ñ I don't think that it had ñ I would say that maybe it had an impact if the jury hadn't been given a flannel instruction, an imperfect self-defense instruction, but they were told explicitly that malice is negated by imperfect self-defense. Malice is negated. And they're told it twice. You can't find murder if you find imperfect self-defense. So I think that it's a red herring, and I don't think it had any impact. You won't express malice or implied malice by the commission of a crime. Right. Absolutely. Now, if you were sitting there as a juror and you had these two instructions about involuntary manslaughter that simply don't apply to your case, are you saying, well, you've got to find that there was negligence or you have to ñ or if we're going to find involuntary, how do you respond to that? This was a very poorly instructed case. We'll all agree on that. I agree. I think that what you do is that, you know, if you're the jury, you're told by really clear instructions that you've got to find all the elements of any offense beyond a reasonable doubt. And so you look and you say, okay, here's voluntary manslaughter and it says intent to kill. And then if you're the jury and you say, well, I don't think there's intent to kill. And so you look at the imperfect ñ I mean, at the involuntary manslaughter instruction and say, well, it says no intent to kill. And counsel, both counsel, talk about for a paragraph or two in each of their arguments, and I'll just cite saying, you know, we have this prosecutor gets up and says, we have this middle ground. It's sometimes called imperfect self-defense. This is a situation where the killer thinks he's in danger but he's unreasonable and that leads us to the manslaughter alternative, which is either voluntary if it's an intentional killing or involuntary if it's not. That's what he tells the jury. Then he goes on ñ that's on the excerpts of record at page 46. Then he goes on and, I mean, the defense counsel gets up and says, no, in the manslaughter context, I would agree with counsel as he puts it. It's either voluntary or involuntary, and the defense is one of intent. He goes on. Under the issue of, you know, he keeps going and says, under the issue of manslaughter, you have to assess whether it's reasonable. And then you're going through back. He goes back here, next paragraph on page 66, talking about the respective differences of the defendants. Did he have intent to kill? Did he have intent to kill? That's what he says. That's the difference between voluntary and involuntary manslaughter. And the answer there is you have to look at the timing, you have to look at intoxication. And I submit to you there was no intent to kill. So you're looking at these instructions, and then you look at the problem that's been pointed out by counsel that says, well, but this involuntary manslaughter instruction qualifies what's an unlawful killing. And so you say, well, this one doesn't fit. Well, I think as a jury, you either ask the court a question, what if we find it an unfit, or you acquit. I don't think you disregard the court's explicit instruction that you have to find each element of the offense beyond a reasonable doubt and say, well, he didn't have an intent to kill, but we're going to find him guilty of, you know, intent to kill anyway, a crime which requires that. So I think, I mean, that's why I don't think it's reasonable to make that assumption. So leaving the verdict aside, what's your best theory that voluntary manslaughter was the appropriate verdict in this case, and therefore there's no prejudice? I think the best theory aside from the verdict and from the instructions taken as a whole, arguments at counsel. Right. I should set that aside. I do think you have to look at the evidence. And I think that the evidence, you know, we basically have is one witness who has a lot of credibility issues. He's a friend of the victim who sees the defendant pull out. I mean, this is the case where the victim threw a beer bottle, is so drunk, misses the defendant. The defendant takes a beer bottle, cracks it over the guy's head. Victim, you know, bleeding and everything. Victim takes another beer bottle, throws it at him, misses. And the defendant pulls out a knife that's a hunting knife that he carries around in a sheath, both-sided hunting knife. And the testimony of one witness is that he does an uppercut and stabs the guy right in the heart. I think that's strong evidence of intent to kill. His testimony is he just impaled himself on the knife. It was an accident. And I don't think that's strong evidence of lack of intent. I think he did intend to kill. Maybe if the jury had concluded it was reasonable, he would have had a self-defense argument, but not a I have no intent to kill argument. It certainly is a murky case. I mean, the murky instructions, but murky facts. It's a barroom brawl. Basically, the defendant didn't get up that morning to decide he was going to kill the victim. No, but I mean, sadly, you know, especially with juveniles, I see murdered all the time on these. He looked at me the wrong way. And, you know, now, I mean, it's tragic, but I don't think that this is a case where these instructions made it likely that the jury wrongly, you know, convicted him of a verdict, notwithstanding the fact that they didn't believe that he had satisfied the evidence, satisfied all the elements of the offense. Kennedy, whether the force that made the knife go into the victim's heart was propitiated by the victim charging or by the uppercut is really a factual question for the jury to determine. Which was resolved by the jury. If there are no further questions, I would submit. Thank you. I have a few points. Earlier, you said that we have to make the presumption that the jury found intent to kill, and I don't think that's the case. I don't think we apply a presumption. Otherwise, there would never be any harm or prejudice when the greater instruction was provided accurately, but the lesser. But there was an error in the lesser instruction. Because in every case where the instruction on the greater is fine and the problem is in the lesser, you'd never have error. I'd like to point out, that would basically be a per se harmlessness sort of analysis. Pirtle v. Morgan, which I cited, talks about this sort of situation where there's two material distinct theories. One is given, one is not, which would negate premeditation. The premeditation instruction was perfect, but it was the lessors that was the problem. And the Court did not find that, well, simply because the greater instruction was accurate, that there was no error. That was a reversal. I also would like to just point out in my briefs in the Court, California Court, I cited People v. Orr, that specifically talks about the elements of involuntary manslaughter, and it stated that the definition of unlawful as an element of involuntary manslaughter differs significantly from that of voluntary manslaughter and requires the trier effect to make substantially different findings. And this goes to the earlier question about, well, these other involuntary theories that were given, and it's substantially different findings than in a manslaughter case. Kennedy. Pardon me, counsel. I'll ask the same question I asked the other counsel. You agree that imperfect self-defense does not change the mental element from intentional killing to unintentional killing, correct? That's correct. Because you still, under imperfect self-defense, you're saying, I intended to kill under the unreasonable apprehension that I was about to be killed. So that pinpoint instruction would not attenuate the mental element changing from voluntary to involuntary, correct? I think I follow what you're saying. There was an instruction that was given to the jury that said something like that. It may change the mental element from murder to voluntary or involuntary manslaughter. Yes. But it can't distinguish between voluntary and involuntary. That's right. But this jury was instructed, along the lines of your question, that the unreasonable self-defense is not a defense to voluntary manslaughter. But I think that's a confusing instruction. Counsel had a hard time answering your question at the beginning and changed her answer. I think that we say that changing one's mind is the beginning of reason. Well, it just points out to me that it's a confusing instruction. It says the jury was told unreasonable self-defense is not a defense to voluntary manslaughter. To me, that suggests that its presence does not assist the defendant in reaching an involuntary manslaughter. That's correct. However, its presence does assist the defendant in getting to a involuntary manslaughter under the instruction that my client asked for. You see what I'm saying? But that would be incorrect, wouldn't it? I mean, you can't, if you give an instruction. It doesn't get you there automatically, but it helps you. In other words, involuntary manslaughter can include unreasonable self-defense. We know that. The jury wasn't told it. But I think this instruction suggests the opposite, that the involuntary that imperfect self-defense doesn't apply to or help you get to involuntary manslaughter. Not from voluntary, it doesn't. Well, it helps you get there. You just have to eliminate, you have to, if you don't have intent, you see. So I guess the whole point of this is that imperfect self-defense assumes intent to kill. I intended to kill under the unreasonable apprehension that I was about to be killed. No, I don't think it does. I don't think it does on the language. It assumes that you act. I mean, you can have self-defense, for example, in a simple battery case. Oh, you do an intentional act, which kills somebody. Intentional act. What difference does that make? It's a general intent crime. But I can punch someone in the face in the... That's a proximate cause issue. No, no. It has to do with the exercise of self-defense. Self-defense doesn't need to be lethal self-defense. It's any form of self-defense. You're supposed to use a reasonable amount of force. And so you can use, exercise the right to self-defense and use interim force, medium force, and have absolutely no intent to kill. But if you are under the apprehension that you're about to be killed, you can use lethal force. You can, but it's not required. And it's not necessarily the case that you have to prove it. In other words, he didn't have to prove he intended to kill in order to benefit from the self-defense instruction. He may have killed. He didn't have to intend it. So it may or may not. It doesn't the defense did not have to prove that he did intend to kill, and the prosecutor didn't have, neither of them had to prove that. And I'm going back one last point concerning the instructions given. The trouble with the instructions given, I mean, I'm sorry, going back to the arguments of counsel, as my opposing counsel described them, that would have been helpful instructions if it was consistent, helpful argument if it was consistent with the instructions. The trouble was it was inconsistent with the instructions. And this notion of you can get to unreasonable self-defense without intent to kill gets you to involuntary. As they said it briefly at the beginning, that didn't, that was inconsistent with what the Court said. It didn't, and therefore, and the jury was told if there's anything inconsistent, then you are to disregard. And they were told at the beginning, this is argument. And it's, and so even if they may have agreed between themselves, if it's inconsistent with what the judge said, the jury was instructed to disregard it. And it was inconsistent because there was nothing in the instructions showing that imperfect self-defense related to involuntary. And there were more than one difference between voluntary and involuntary because of this special, precise and convoluted definition of illegal in the involuntary instructions. Justice Mosk did find error under Watson. I think that the error is that there was prejudice in this case, and I urge this Court to reverse it. Thank you very much. Thank you, counsel. Thank you both for your arguments. The case is currently submitted. We'll proceed to the next case on the oral argument calendar, which is Plumlee v. Del Papa. I assume all you Nevada residents have voted absentee today. I did on Friday, right?
judges: B. Fletcher, Thomas, Bea